DAVID A. RHEA v. GEORGE BREWSTER, ET AL., Appellants.

**Deposits in court: INVESTMENT: INTEREST.** The party entitled to
a fund coming into the hands of a clerk of courts, in his official
capacity, is also entitled to the interest upon the fund earned
while on deposit with a bank in the clerk's name, under Code,
section 1183.

*Appeal from Sioux District Court.*— HON. WILLIAM
HUTCHINSON, Judge.

THURSDAY, JUNE 7, 1906.

THE plaintiff alleged that the defendant George Brews-
ter was clerk of the district court of Sioux county during the
period mentioned, and that Lewis Brewster and John Mor-
ris were the sureties on his official bond; that on March 26,
1902, Henry Meylink instituted an action against the plain-
tiff, David A. Rhea, and wife, praying for the specific per-
formance of an oral contract to convey a quarter section of
land, and paid into the office of said clerk $9,430 as a ten-
der of the balance of the purchase price; that the cause was
heard and specific performance decreed by the district court;
that appeal was taken therefrom in February, 1903, where-
upon said clerk deposited said money so tendered in court
with the banks at Orange City, Iowa, in his name, upon the
written promise that they would pay interest at the rate
of four per cent. per annum thereon; that said decree was
affirmed by the Supreme Court in February, 1904; that the
interest on the deposits then amounted to $377.20; that the
clerk paid upon demand the principal amount to plaintiff,
but refused to pay the interest. Wherefore judgment was
demanded therefore, with interest. The official bond was
attached to the petition. The defendant demurred on the
grounds: (1) That the petition showed that the amount re-

ceived has been paid over to the party entitled thereto; and (2) that the defendant George Brewster received said money with the duty to safely keep and preserve the same, and pay over, upon the order of the court, to the person entitled thereto, and that he is in no manner liable for any incidental advantage accruing to him by reason thereof. The demurrer was overruled, and. as the defendant refused to further plead, judgment was entered as prayed. The defendants appeal.— *Affirmed.*

*Van Oosterhout & Hospers,* for appellants.

*Struble & Struble,* for appellee.

LADD, J.— On the 26th day of March, 1902, Henry Meylink filed his petition in the district court of Sioux county, demanded the specific performance of an oral contract to sell certain land in Sioux county, and at the same time paid into the hands of George Brewster, as clerk of said court, the sum of $9,430 as a tender of the balance of the purchase price. The defendant therein, David A. Rhea, filed his answer and the cause proceeded to trial, which resulted in a decree as prayed, in December, 1902. Appeal was taken to this court, whereupon the clerk deposited the aforesaid amount in the banks at Orange City, upon their written promise to pay thereon interest at the rate of four per cent. per annum. The decree was affirmed. *Meylink v. Rhea,* 123 Iowa, 311. On the 26th day of February, 1904, the clerk withdrew from the banks the amounts deposited, together with $377.20 interest, but paid Rhea the original amount tendered only, retaining the interest for himself, though this also was demanded. The defendants John Morris and Lewis Brewster are the sureties on the clerk's official bond approved March 26, 1902, and the question to be determined is whether he and his bondsmen are liable for interest received by him on money paid into his

hands by Meylink as a tender for use and benefit of the plaintiff. The conditions of the bond were those exacted by section 1183 of the Code, and among other things stipulated that " the clerk will promptly pay over to the officer or person entitled thereto all moneys which may come into his hands by virtue of his office." The money came into his hands by virtue of his office, and, though as a tender in a case, became the property of the plaintiff upon the specific performance of the contract to purchase in accordance with the decree of the district court, affirmed by this court, and his title thereto related back to the time of such tender. That the clerk was liable for the money tendered is not questioned. See *Billings v. Teeling,* 40 Iowa, 607. We think he is liable for any increase or increment thereon. Section 296 of the Code provides what fees shall be collected by the clerk of the court and section 297 fixes his compensation. That duties may be required of him for which no compensation is provided does not authorize the allowance or exaction of additional compensation. *Upton v. Clinton Co.,* 52 Iowa, 311; *Howland v. Wright Co.,* 82 Iowa, 164; *City of Council Bluffs v. Waterman,* 86 Iowa, 688; *Mousseau v. Sioux City,* 113 Iowa, 246, and cases cited therein. In undertaking to· discharge the duties of the office, he necessarily assumed, with the honors and emoluments, the burdens also. The money did not become the property of the clerk. It was merely deposited with him as custodian for the benefit of the party to the suit who might be adjudged entitled thereto.

The appellants argue the case on the theory that the clerk is absolutely liable for money coming into his hands as such. In view of the form of the bond and the language of the statute, it is exceedingly doubtful whether this is so. See *Ross v. Hatch, County Treasurer,* 5 Iowa, 149. The decisions relating to the liability of the school district are not in point, as they are based on statutes applicable to such officers only. But see notes to *Feller v. Gates,* 40 Or.

543 (91 Am. St. Rep. 492), and *Smith v. Patton,* 131
N. C. 396 (92 Am. St. Rep. 783). In either event he
had the right to deposit the money for safe keeping. *Hunt
v. Hopley,* 120 Iowa, 695. Even if absolutely liable for
the repayment of the money received by virtue of his office,
however, this did not render it his money nor change his
obligation to produce it when required, to that of a private
indebtedness. So assuming is the vice in the reasoning of
the decisions upon which appellant relies. They proceed
upon the theory that, when the obligation of the official is
absolute, his obligation is merely that of a debtor, and,
therefore, that he cannot be charged with the incidental ad-
vantages derived from the use of the money. See *Maloy
v. Bernalillo County Commissioners* (N. M.) (52 Pac. 126,
52 L. R. A. 126); *State v. Welsen,* 17 Colo. 170 (28 Pac.
1119, 15 L. R. A. 456); *Com. v. Godshaw,* 92 Ky. 435
(17 S. W. 737); *Rock v. Stinger,* 36 Ind. 346; *Renfroe v.
Colquitt,* 74 Ga. 618. In Rock v. Stinger, *supra,* the treas-
urer was held to be the owner of the fund received by him,
and for that reason was not bound to account for interest
which he realized thereon. In Renfroe v. Colquitt, *supra,*
action was on the bond of the State Treasurer to recover
interest on the deposit of public funds. It was held that
as in depositing the money, the treasurer violated a penal
statute and, as the interest was acquired through an illegal
act, the treasurer did not receive it by virtue of his office.
In Com. v. Godshaw, *supra,* the action was on the official
bond of a trustee of the jury fund. Subsequently it was
enacted by the Legislature that all the portion of the fund
not required for immediate use should be paid to another
officer. The trustee failed to turn it over and received in-
terest thereon for a period of ten years. In the course of
the opinion it is said that, as the officer was absolutely liable
to account for the funds, he is not liable for any interest
he may have realized thereon. The reason given was that,
as between county and the officer, the fund must be treated

as his money and not that of the state or county.    In People v. Welsen, *supra,* the court first construed certain statutes obviating all liability of the State Treasury for interest, and then added another reason, not necessary to the decision, that, because of the absolute liability of the treasurer to account to the state for all funds coming into his hands by virtue of his office, he cannot be required to account for interest received by him thereon.    Maloy v. Bernalillo County Commissioners, *supra,* follows the last ground of the decision in People v. Welsen.    State v. McFetridge, hereafter referred to, does not seem to have been called to the court's attention.    As noted, these decisions rest upon the assumption that the obligation of the official is that of a private indebtedness, and hence the rule which requires the trustees in all cases to account for profits does not apply. We think that the clerk of the district court in receiving fees or moneys by virtue of his office does not become the owner thereof, or a mere debtor for the repayment thereof to those entitled thereto.    Nothing in the statutes so indicates, and the bond prescribed by section 1183 of the Code requires that he " render a true account of his office and of his doing therein to the proper authority when required by law; that he will pay promptly over to the officer or person entitled thereto the moneys which may come into his hands by virtue of his office; that he will promptly account for all balances of money remaining in his hands at the termination of his office; that he will exercise reasonable diligence and care in the disposal of moneys and deliver them to his successor, or any other person authorized to receive the same."    He does not become the owner of the property or moneys received.    He is simply the custodian thereof.    He receives his compensation from the county and is bound not merely to pay, but to account and pay over all moneys coming into his hands by virtue of his office.

The true test, as it seems to us, is not whether he is absolutely liable to account, but whether he is the owner of

the funds in his hands. If he is not such owner and the moneys coming into his hands, belong to the county or some one else, any increment thereto is and should be treated as a part of the principal. This is the view approved in the better considered cases, and the only one consonant with sound public policy. In an early New York case *(Board of Supervisors v. Wandel,* 6 Lans. [N. Y.] 33; Id., 59 N. Y. 645) a county treasurer was held liable for interest received by him on county funds, not only because of his fiduciary relation, but for the interest belonging to the county, the court saying: " The notion that a public officer who would keep back interest which he has received upon a deposit of public moneys as a prerequisite of office, is an affront to the law and morals; if done with evil intent it is nothing less than embezzlement. Having been received by Wandel as county treasurer, the item of interest is within the terms of the bond." See, also, *Hughes v. People,* 82 Ill. 78; *United States v. Mosby,* 133 U. S. 273, 10 Sup. Ct. 327, 33 L. Ed. 625; *Hunt v. State,* 124 Ind. 306 (24 N. E. 887) *Eshelby v. Board of Education,* 66 Ohio, 71 (63 N. E. 586) was an action against a school treasurer for interest received by him, and in adjudging him liable therefor, the court said:

Whether he should be regarded as ' a bailee with express and extraordinary liabilities, or as a special trustee,' is not material; for he is in either view the custodian of funds which belong to another. Since the funds belong to the school district, the ultimate question in the case in answered in favor of the defendant in error by the elementary proposition that, in the absence of a statute or stipulation to the contrary, the increment follows the principal. It does not aid an inquiry as to what the law is to suggest that the district would not be injured by the deposit of its funds at interest payable to the custodian since he may deposit it without interest. The suggestion does not appear to have been favorably considered by the Legislature, since it has indicated that, while he may deposit it, he may not in any manner invest it. The safety of public funds has been the chief

object of care. For their security the law employs the character and ability of the treasurer and the security which is afforded by his official bond. It has not been thought expedient to establish a policy which would give to the treasurer any personal motive in selecting a place of deposit, not does the case suggest any reason why it should be regarded as an exception to the rule that a public officer shall receive such compensation only as is expressly, provided for.

*State v. McFetridge,* 84 Wis. 473 (54 N. W. 1,998, 20 L. R. A. 223), was an action against the Treasurer of the state for interest received on deposits in banks, and after holding the money, although deposited by the Treasurer, belonged to the state, the court in referring to the authorities first cited said:

The foregoing seem to be the cases most relied upon to sustain the proposition that Treasurer McFetridge and his sureties are relieved from liability on his official bond for the interest claimed, because of his absolute liability to the state for the public funds received by him by virtue of his office. With all due deference to the able courts which have asserted or intimated the existence of the alleged rule under consideration, we are constrained to say that, in our opinion, they have failed to demonstrate, either by authority or upon principal, that the same has any place in our jurisprudence. It has already been held herein that the public funds were lawfully deposited by Treasurer McFetridge with the banks, and that he lawfully received from such banks compensation by way of interest for the use of such deposits. Under those circumstances, and in the absence of any statute separating the interest from the fund and diverting it to other uses, such interest was an accretion or increment to the fund, thus becoming a part of it, and logically and necessarily belongs to the owner of the fund, to wit, the state. It is immaterial that the treasurer stipulated for interest on the deposits, or that the banks paid him such interest without stipulation; both the treasurer and the banks intending that he should retain the same as his own, and believing that he was entitled thereto. Such intention and belief cannot affect the ownership of the interest, or its essential character as a portion of the public

funds in the hands of the treasurer. Notwithstanding such intention and belief, the interest was, in fact, paid to the State Treasurer and belonged to his said office, within the meaning and intention of the bond in suit. A lawful act cannot be rendered unlawful merely because the actors intended to follow it by an unlawful act. So, when the treasurer lawfully receives money which of right belongs to his office, he receives it by virtue of his office, and cannot by forming and executing an intention to retain the money as his own, divest the act of receiving the money of its official character. The fact remains that he received it *virtute officii*. This is a most salutary rule, which should never be departed from unless clearly abrogated by some staute.

The ruling on the demurrer was right, and the judgment is *affirmed*.